[No. 19443. Department Two. November 24, 1925.]

JAMES F. LEE, *Appellant,* v. CHARLES F. WALMSLEY *et al., Defendants,* NATIONAL SURETY COMPANY, *Defendant and Respondent.*[1]

LANDLORD AND TENANT (15)—LEASES—CONSTRUCTION—CONDITIONS. The assignee of a hotel lease is liable for real property taxes and assessments, and cannot offset them against the assignor, where, on the sale of the lease, hotel furniture and equipment, he "assumed and agreed to pay the real property taxes and assessments" for a specified year, and the landlord consented to the assignment on condition that he should assume and agree to carry out the terms of the lease, which required the payment of such taxes.

ACTIONS (29)—CHATTEL MORTGAGES (61)—PREMATURE COMMENCEMENT—OPTION AND ELECTION TO FORECLOSE. A chattel mortgagee is entitled to recover the face of the note, without deduction therefrom of interest that would have accrued on future installments, where the circumstances authorized an action under Rem. Comp. Stat., § 1111, to foreclose before maturity of the note, if the mortgagee has reasonable cause to believe that the property is in danger of being destroyed, lost, or removed.

[1]Reported in 240 Pac. 906.

Cross-appeals from a judgment of the superior court for Pierce county, Card, J., entered March 28, 1925, upon findings, after a trial to the court, in an action on contract, tried to the court. Modified.

*Stiles & Latcham,* for appellant.

*Robert H. Evans,* for respondent.

MITCHELL, J.—The owners of the Donnelly Hotel property, in Tacoma, executed and delivered a lease of it for a period of ten years, beginning on January 1, 1918. By mesne assignments, the Haynes Donnelly Hotel Company, a corporation, became the owner of the lease, and took possession of the property on December 1, 1921. It continued to operate the property as a hotel until February 1, 1924, when possession was delivered to James F. Lee. The Haynes Donnelly Hotel Company was organized as a corporation by Charles F. Walmsley and wife and J. S. Haynes and wife, who owned and held all of the stock of the corporation. They, for the corporation, received an assignment of the lease immediately from one Mrs. L. B. Wisner. During the occupancy of the premises by the corporation, a controversy arose between Walmsley and Haynes on one side, and Mrs. Wisner on the other, as to who should pay certain taxes, etc., against the property, and also as to the enforcibility of a mortgage on the property given by Walmsley and Haynes to Mrs. Wisner. That controversy reached this court and is reported in *Haynes v. Wisner,* 129 Wash. 92, 224 Pac. 592.

While that litigation was in progress, the corporation, on or about January 16, 1924, sold its interest in the leasehold and the hotel business to James F. Lee for $27,000. The terms were $15,000 cash, and $12,000, payable $1,000 each month during 1927, the last year of the leasehold, evidenced by a note in that amount

given by Lee and secured by a chattel mortgage on the property. The note and mortgage were made payable to Walmsley and Haynes, the principal sum bearing no interest prior to maturity.

Among other things, in making the deal, Lee, to protect himself against possible loss on account of the mortgage held by Mrs. Wisner, exacted a bond in the sum of $8,000 which was given by Walmsley and Haynes with the National Surety Company as surety. Upon procuring the surety company to sign the bond, the surety company received for its protection an assignment by Walmsley and Haynes of the $12,000 note and chattel mortgage given by Lee.

After the decision of this court in *Haynes v. Wisner,* Mrs. Wisner obtained a judgment of foreclosure of her chattel mortgage. Upon sale being advertised by the sheriff, Lee was compelled, in protection of his rights in the property, to pay the judgment with costs to Mrs. Wisner. Thereupon, in December, 1924, James F. Lee brought this action against Walmsley and wife, Haynes and wife, and the National Surety Company, on the bond.

Walmsley and Haynes made no appearance in the action, and by an order were declared to be in default. The National Surety Company appeared and by its pleading put in issue material allegations of the complaint, and interposed a cross-complaint, alleging facts concerning the $12,000 note and mortgage assigned to it, upon which it demanded judgment declaring the maturity of the obligation, in which sum it demanded judgment and for a foreclosure of the mortgage, including a reasonable attorneys' fee. Each of the contesting parties thereafter filed a pleading setting up certain facts, only a portion of which it is necessary to mention as the case is presented on the appeal. The plaintiff, in his reply, denied the facts upon which the

surety company sought to have the $12,000 note declared matured. He further alleged that, in protection of his interests in the property, he had been compelled to pay, in addition to the requirements of his contract with Haynes and Walmsley, general taxes on the property for 1923 in the sum of $6,831.64; income tax arising out of the lease, assessed by the Federal government, in the sum of $480; and special assessments on the property in local improvement districts in the sum of $1,964.90, all of which, with interest, he demanded the right to offset against whatever, if anything, was recovered on the $12,000 note and mortgage.

Upon the trial of the case, the court found facts sufficient, and declared the maturity of the $12,000 note, but that its then value was $1,590 less than its face value because by its terms it would not mature until month to month during the year 1927. Other formal findings of fact and conclusions of law were entered. The judgment, dated March 27, 1925, was that the plaintiff recover on the bond against the National Surety Company in the sum of $8,182.67, which includes principal and interest. Neither party now objects to the amount. The judgment further provided that the National Surety Company have judgment on its cross-complaint in the sum of $10,410 (which the court had found to be the then present value of the $12,000 note), and for an attorney's fee. It was further provided in the judgment that the property mortgaged be held to be sold upon application of the surety company in the event the amount due it, after deducting the amount allowed the plaintiff, was not paid.

The plaintiff has appealed, and by a written stipulation in the record limits his rights on the appeal. The stipulation provides that the plaintiff on his appeal,

" . . . will not attack or seek to reverse the final judgment of this court herein save and except that the plaintiff will seek to have the supreme court review, set aside and reverse the action of this court in refusing to set off against the note and chattel mortgage, the taxes and local assessments referred to and pleaded as a set off in plaintiff's reply or answer to the defendant's cross complaint and counterclaim."

And

" . . . that the notice of appeal heretofore filed by the plaintiff will be construed and limited by this stipulation to said issue in the supreme court."

The National Surety Company has cross-appealed, contending that the $12,000 note and mortgage on which it sued should not have been discounted or reduced below its face value.

Some of the terms of the lease must be noticed. The rent reserved was $1,000 a month. It was also provided in the lease as follows:

"(3) The lessee agrees to pay and discharge before delinquency, all taxes, assessments, liens or other encumbrances which may be levied, assessed, accrue or arise against the property herein listed or the improvements thereon under any state, county, city or other municipal law, ordinance or authority, including improvement assessments and all exactions of every kind and character levied by public authority against said property after the beginning of this lease, also any tax which may be levied or assessed against the owners and each of them under the laws of the United States assessed and calculated on the income arising out of this lease.

"(4) The lessee agrees to pay, in addition, the sum of Five Hundred Dollars ($500) per month beginning February 1, 1918, until the sum of Twelve Thousand Dollars ($12,000) has been paid to the owners. Said sum of $12,000.00 shall constitute a partial security unto the owners for the prompt and faithful perform-

ance by the lessee of each and all the obligations of the lessee hereunder. Insofar as said sum shall not be applied to reimburse the owners for damage suffered by reason of any default by the lessee in performing the obligations of this lease, it shall be applied upon payment of the last year's rent under this lease.''

It also provided that, in case of default for twenty days on the part of the lessee to keep and perform any of the covenants during the term, after written notice of the same given by the owners, it should be lawful for the owners, at their election, to declare the term ended with the right of reentry either with or without process of law. By section 13 of the lease, it is provided:

''Should the owners desire to terminate this lease at any time before the expiration of the term herein provided for, apart from any of the rights of termination hereinbefore specified, they shall have the right to do so by giving thirty (30) days notice in writing of intention so to do and by paying to the lessee at the end of said thirty (30) days, the sum of twenty thousand dollars ($20,000) in cash. Any notice required by this instrument to be given to the lessee shall be sufficient if deposited in the United States mails, postage prepaid, addressed to the lessee at Tacoma, Washington. In case the owners shall cancel the said lease under the terms of this section, in addition to the $20,000 to be paid by them to the lessee as herein provided, they shall return to the lessee the sum of $12,-000, or so much thereof as has been deposited under the provisions of section 4, less the amount which has been applied, or is applicable to the payment of unpaid rent or reimbursement to the owners for damages sustained by reason of default of the lessee as provided for.''

The lease further provided:

''The lessee shall not assign this lease nor any interest therein without the written consent of the owners

first had and obtained. . . . Except as herein provided, the benefits and obligations of this lease shall inure to and be obligatory upon each of the respective parties, their heirs, executors, administrators, successors and assigns.''

There appears to be no doubt that the fund of $12,-000 made up by the additional rent of $500 a month, as provided for by paragraph 4 of the lease, had been paid to the landlords. At the trial it was shown that, after the issues in the case were made up, the landlords had exercised their rights under paragraph 13 of the lease, had terminated the lease and paid to Lee the $20,000 and also the $12,000 fund, or such portion of the latter as he was entitled to.

On the main appeal, it is contended that, altogether, it was the understanding that the appellant was obligated to pay taxes and assessments that were placed on the property during the time he was supposed to occupy the premises, that is from February 1, 1924, to the end of the term. It is argued therefrom that, because the mortgage he gave to secure the payment of the $12,000 note provides, ''In the event the mortgagor is obligated, in order to protect his interest, to make any payment on account of debts, liens or taxes on said property, which the mortgagor has not expressly assumed or agreed to pay, such payments may be credited upon the above described note and on this mortgage,'' he is entitled to the credits and offsets demanded. The language, in effect, is that he shall be credited with all such amounts paid by him except such as he expressly assumed and agreed to pay. Under the written agreement between the parties of January 16, 1924, making sale of the ''lease, leasehold rights, including $12,000 cash security on the same, all furniture furnishings and other equipment, etc.,'' it was provided that—

"The purchaser [Lee] assumes and agrees to pay the real property taxes and assessments for the year 1923."

Of the $1,964.90 special assessments, $383.57 of them were installments falling due in 1923, and those installments, together with the general taxes of 1923, he had, in his agreement with Walmsley and Haynes, expressly assumed and agreed to pay, and for that reason was not entitled to credits on the note and mortgage. As to the remaining $1,581.83 of special assessments, they were liens created on the property prior to 1923, during the term of the lease, installments for which fell due subsequent to 1923 and for the payment of which the lessee was bound under the terms of paragraph 3 of the lease. The owners of the property in giving their written consent to the assignment of the lease to Lee, stated in the writing that it was "on condition that said James F. Lee assumes and agrees to carry out the terms of the said within lease." Those assessments were obligations payable during the contemplated tenancy of Lee that he understood he was to pay, or else they were obligations falling due after he took possession of the property and was compelled to pay so as to entitle him to the $12,000 fund in the hands of the landlords upon their terminating the lease under its terms. They were not delinquencies of Haynes and Walmsley, and hence appellant was not entitled to credit therefor on his note and mortgage. The income tax of $480 was for the year 1923. It accrued prior to the occupancy of the premises by the appellant, and as between these parties it was an obligation of Walmsley and Haynes. In the agreement of January 16, the purchaser agreed to pay "the real property taxes and assessments for the year 1923." Fairly considered, an income tax for 1923 does not fall within those terms,

and since he had not expressly agreed with Walmsley and Haynes to pay it, the appellant is entitled to credit to that amount, with interest, on the note and mortgage.

As to the cross-appeal, there should not have been any deduction of interest from the face of the note. The trial court found, upon an abundance and a preponderance of the evidence,

"That the acts of the plaintiff, Lee, as the mortgagor of said property jeopardizes and renders insecure the security of said chattel mortgage, and there is danger of the same being lost and destroyed as security, and defendant National Surety Company is entitled under its cross-complaint, to have said debt matured."

Section 1111, Rem. Comp. Stat., provides:

"Where the debt is not due for which the mortgage is given, and the mortgagee has reasonable cause to believe that the mortgage property will be destroyed, lost, or removed, he shall have the right to an immediate action in the superior court of the county having jurisdiction where the property is situated, for the recovery of his debt, . . ."

This statute provides, under circumstances mentioned, for the acceleration of the maturity and recovery of the debt, that is the whole debt. Nor does this view of the matter work the least hardship upon the mortgagor. The purpose of the parties in making the note payable monthly during 1927 was to allow it to be earned by the mortgagor out of and during his occupancy of the premises. But, by the lawful action of the landlords, that right of occupancy had been terminated by an option expressed in the terms of the lease, and in its stead or as a substitute for it, the defendant had been paid $20,000, which was more than enough to pay the note and mortgage.

The judgment appealed from must be modified, and for that purpose the cause is remanded to the superior

court to modify it according to the views herein expressed.

TOLMAN, C. J., MAIN, PARKER, and MACKINTOSH, JJ., concur.